Defense Cases, Felton v. Local Union 804 et al. and United Parcel Service, Inc. We have Ms. Rodriguez-Klasky and Mr. Felton. We didn't know you were coming today. We thought you were on submission, but since you're here, we certainly will give you a chance to argue. Thank you. I appreciate it. I don't know where the confusion lies, but you have four minutes and then one minute in rebuttal. You can begin whenever you're ready. Thank you. Good morning. May it please the Court, my name is Janice C. Rodriguez-Klasky, and I represent the appellant Jeffrey Felton. Appellant brought this appeal after being denied his day in court at the arbitration level and in the lower court. His fight to be heard has been going on since 2016 when he was terminated without cause by UPS for having car keys overnight the day before New Year's Eve at the direction of his supervisor. Although the union filed a bare bones grievance on behalf of Felton, it did not actually represent him at the hearing. The lower court in Felton 1 held that representation had occurred. The record does not support that finding. At no point in the complaint or any of the complaints did Felton actually indicate that he was represented. Felton 2, the current case that's up on appeal, was brought after Felton 1 was dismissed because in an unrelated action it came to light that Hoffman, the arbitrator who purportedly decided the arbitration, had actually not been a tiebreaker, but that the union and UPS had actually ruled at the arbitration against him. The very UPS, rather the very union members that had encouraged him to pursue the arbitration... But we said the union appointed members of the arbitration panel don't have to vote for the represented union member, right? That's correct. It's not part of their duty of representation. That's correct, but in this... So why does that make a difference? It makes a difference because throughout the process they supported him, and even after the decision was rendered, they indicated that the panel, the arbitrator, had decided that it was a tiebreaker. So throughout the process they purported to be on his side, and then it turns out that in fact they were not. And it's unclear, based on their omission, they're indicating to him... But why does that matter? So if the people representing him at the hearing had represented him, if the only new evidence he had or purportedly new evidence he has is the idea that the arbitrators who were appointed by the union didn't vote in his favor, and we said that that's not part of the union's duty of representation, that doesn't change the case, does it? It changes the case to the extent that he was lied to and that the fact that they weren't going to support him... But you're not suing them because he was lied to, right? You're suing them for failing in their duty of representation. They didn't actually represent him. So separately from that... But they don't have to necessarily vote in his favor. They're allowed to exercise their decision-making discretion. You'd have to show it was arbitrary. If you had... That's the standard. You have to show it's arbitrary or in bad faith. So what made their vote against your client arbitrary? So the arbitrary and the bad faith is twofold. First, there was no evidence actually presented in support at the hearing of Felton's case, while he was being told that they all were advocating for and supporting him and would not... But that's Felton 1, right? That's Felton 1, right? So we're just talking about whether the new evidence makes a difference here. So is your position that this new complaint is a new action or it's a motion for relief? It's a motion for relief under Federal Rule 60. Okay, so if that's true, if it's a 60B motion, then you need to show that the new evidence would make a difference, right? The new evidence makes a difference in that we believe that there was collusion throughout the process. This was not a decision made at an arbitration to rule against my client, but rather a systematic effort to push him out. The record does not have the methods and means that he supposedly violated. It does not have really any substantiation for the actual reason or basis for termination. And at the hearing, they didn't present any evidence whatsoever. It wasn't a decision to present certain evidence over other evidence. They didn't present any evidence on direct. They didn't cross any witnesses. Simply, he got nothing for the hearing. He was lulled into believing he would have his day in court, and he didn't have anything. He had a sham panel. All right, thank you. Thank you. We'll hear from Mr. Charney. Good morning, Your Honors. May it please the Court, Nathaniel Charney, Charney and Wheeler, PC, on behalf of Local 804, the Teamsters. I will be brief. I think the appellant has a significant misunderstanding of the joint panel process. The brief is riddled with statements like the union sided with UPS against the appellant, the union cannot possibly have represented appellant when it agreed to uphold the discharge. That shows a misunderstanding about the joint panel process. So the union designates somebody to sit on the panel, and as Your Honor pointed out, they don't have to rule in favor of the union each time. In fact, virtually every single circuit court that has addressed the issue said that that would be a problem, that their duty of fair representation when they sit on a joint panel is to be fair and impartial and not take sides, one side or the other. There are a couple cases that are not in my brief that I just wanted to point out on that fact, although it sounds like Your Honors are already there. There's the early case, which is a First Circuit case, 699 F. Second 552. That's kind of a seminal case. And another seminal case is the Thomas case, which actually interpreted the same panel process, a UPS panel process, that's Seventh Circuit 890 F. Second 909. What's your response to her argument that there was no evidence against her client? It was just railroaded. There was no cross. What's your response to that? Well, I would join in the posture that that's Felton 1, that we've litigated that in Felton 1, and what the judge determined in Felton 1 is that there was, in the pleadings themselves, there was sufficient evidence that the union satisfied the admittedly bare minimum under the standard of the law in order to present the case on behalf of Mr. Felton. I believe the record is that they vigorously and zealously advocated on his behalf, but the pleadings themselves were sufficient for the court to throw the case out saying, no, the union did what they had to do. Just because you lost doesn't mean that they didn't satisfy their duty. So that would be my response there. One other thing I wanted to point out, and then I'll leave it to the pleading, to the briefing, and any questions you have, there was a few references in Appellant's brief to collusion. We just heard it just now that there was collusion and that kind of inappropriate behavior by the union, including a sentence in the brief a couple times that the panel agreed beforehand, that there was some collusion beforehand. There is no record and no evidence anywhere in the record of collusion beforehand, because there was no I think we credit the allegation that actually they had lied to him in saying that they voted in his favor. Is there an inference that maybe they were conspiring against him? Is that a reasonable inference? There's not a reason. The only thing you take from assuming that fact to be true, which it's not a true fact, but let's assume it's true, the only thing you can do with that fact is determine, all right, does that breach the duty of fair representation? Well, no, I get the idea that they voted against him, would not breach the duty of fair representation, but the idea that they told him that they voted in his favor, but in fact they did not, it's not just that they didn't vote for him, it's that they misled him as to what they were doing. Why does that raise more of a concern about the duty of fair representation? Because it's not evidence of collusion. It's evidence of a lie. Again, the lie didn't occur, but it's evidence of the union lying to Mr. Felton about what had occurred during the panel process. Again, it's not true, and I do want to save 30 seconds to process that, Judge, but what it does is that is potentially a breach of the duty of fair representation. Potentially, that lie itself may be a standalone breach, but what's the causation to the discharge? What's the causation to any damages whatsoever in Felton's work? So you're saying that maybe it actually is a breach of the duty of fair representation if they misled him, but because the presider of the arbitration plus the two company members voted against him anyway, it didn't have a causal effect? The lie happened after the panel process. Find me some evidence anywhere in the record of collusion in the panel process itself. Why is it an inference that if they lied to him, then they really weren't acting in his best interest? Right. So let's say I agree with you that they lied to him and that is a breach of the duty of fair representation. You're saying, well, it didn't affect anything because they breached the duty after the arbitration had completed, but why wouldn't I infer that if they're not fulfilling their duty after the fact that they didn't fulfill their duty during the- Because there is no allegation nor any relationship between this alleged lie that happened after the fact. So even if they didn't like him, if they did the things that the complaint says they did during the arbitration, there wouldn't be a breach of the duty to that extent? That's already been decided in Felton 1, and the new evidence doesn't change that. And if I may- Well, what about the point that actually the complaint in Felton 1 talks about a bunch of different tactical decisions, but the complaint in Felton 2 just says they didn't do anything or put on evidence? Why shouldn't we credit those allegations? Because as the trial court found, that's a race judicata. We're done with that question. Whether there were tactical or no tactical errors, that's over. That's Felton 1. We're in a Rule 60 posture right now. Is the extraordinary relief of reopening that case, is that allowed because Mr. Hoffman said something during deposition in a completely unrelated manner? Counsel said that Mr. Hoffman was the arbitrator. He's not. Mr. Hoffman is a management rep at UPS. He's a labor rep for UPS. He has no relationship to the arbitrator himself. Mr. Hoffman is a management rep. He was at a deposition. In the brief, you'll see exactly what he said. It was actually very truthful. The panel ruled against him. The panel includes the neutral arbitrator. So Mr. Hoffman is not. Thank you very much. Mr. Cork. Good morning, Your Honors. May it please the court. The issues in this case have been litigated and re-litigated since April of 2017. Thirteen complaints and seven years later, the district court correctly decided that appellant was not entitled to relief from the prior judgment, and that in the alternative, appellant's claims were barred by res judicata. Having already made the decision in a prior action. In so doing, the district court applied the correct standard, taking into account appellant's pro se status, and this court should affirm. This court's made clear that Rule 60 motions are disfavored, and they're only to be granted in exceptional circumstances. The newly discovered evidence here must be of such importance that it likely would have changed the outcome, and it doesn't. The deposition transcript appellant offers shows that his grievance was denied by a unanimous panel, rather than a neutral member of the panel. That doesn't meet this high burden of extraordinary circumstances. That admission would not have changed the ultimate outcome in the prior decision. But you've heard from Mr. Charney that maybe it actually was a breach of the duty of fair representation, that they misled him about what they had done. So if he has new evidence about a breach, why isn't that important evidence? Because it doesn't give him evidence of the second prong, which is causation. If he has evidence that the union engaged in a breach, that breach didn't cause the panel to uphold his termination. The panel upheld his termination either unanimously or not. The breach does not create that outcome. And the district court here found that the new evidence would not have changed her decision here for precisely that reason. That there was no causation between whether the panel was unanimous or not, and the ultimate upholding of the termination decision. The union statement. So the record shows that Felton worked for UPS for a decade and then was fired because he kept his keys home one night. Is that right? That's right. With some context, I believe he was on a last chance agreement at the time. So he has a history of disciplinary history. And yeah, he took the keys. So you're saying it's not just that. It's that there was some other misbehavior before keeping the keys home the one night. I think it's unclear in the record whether it was the single infraction of taking the keys home or the history plus the single infraction. But either way, it's UPS's position that that single infraction was enough to support the termination. But he was under a last chance agreement? Yes. Which means what? Which means he had a history of discipline where he was told, all right, you have one more chance to comply with our rules and standards. And if you don't, you will be terminated. Is he right that he should have been paid while his grievance was pending? I don't know the answer to that. I'd have to check the CBA. I think it's immaterial to this case whether he should have been paid or not. Why is it immaterial? Why isn't that an allegation that they're not following the proper procedures? So maybe he's not getting what he's entitled to under the CBA. Because this is a hybrid 301 case. So he first has to prove that the union breached duty before he proves there's a violation of the CBA. And he does not allege in any of the 13 complaints that the union failed in its duty because he didn't get paid. So maybe he could have brought a separate claim to get the back pay if he was entitled to that under the CBA. But he hasn't done that. Well, he would have gotten the back pay had he proved that his termination was not in compliance with the CBA. Even if he was entitled to be terminated, I understand that he says that while his grievance was pending, he still should have been paid until he was actually terminated. And he wasn't. So maybe he'd be entitled to that back pay regardless of whether he was terminated, right? I suppose he'd first have to prove again that there was a breach of the duty and then a breach of the contract. And it doesn't have any bearing on the hybrid claim. Exactly. Okay. Or it's a separate. I should say, let me correct it. It's a separate hybrid claim. He'd have to say that the union breached its duty to represent him as to the payment during the process. And that that breach was also a breach of the CBA. It would have to be subject to a different grievance, I guess, as opposed to, like, it wouldn't be about the termination. It would be about something else. But, okay, I understand. Right. Let me address the res judicata argument, which we didn't talk about. So the district court here decided, I believe in the alternative, what it did is treated the motion first because of the pro se status of the appellant as a Rule 60 motion. Then it decided in the alternative because appellees moved for res judicata under Rule 12. In the alternative, even if we put aside the Rule 60 determination, these issues have been decided between the same parties on the same claims. And res judicata bars the bringing of the action a second time. I think appellant correctly argues that res judicata doesn't bar claims on new conduct or conduct that occurred after the judgment. But I see my time's up. If I could just finish my point here. The conduct here was not new conduct. It was conduct that occurred prior to the judgment that appellant later learned. That's not a basis for circumventing the res judicata rule. Thank you. Ms. Rodriguez, you have one minute. Thank you. Just to clarify, in the deposition of Mr. Hoffman, he does specifically say that in the Felton case, the decision indicated that it was decided by the union and UPS. That testimony- The panel decided against him, and the panel consists of the union and UPS. But it doesn't specifically say that the union appointed members voted against him, does it? I believe it says it was three on each side decided the decision. Okay. That's my understanding. Fundamentally, if the court affirms the lower court decision, it's a miscarriage of justice. Mr. Felton did not have his day in court, and the false statements that came to light after the dismissal of Felton, one, should necessitate reanalyzing whether a representation actually occurred. Separately, Mr. Felton did at all times maintain that he was owed back pay and was improperly terminated without that back pay and let go for a cardinal infraction, whereas there's nothing in the record to support that there was really any violation of the means and methods, let alone that it was a cardinal infraction requiring immediate dismissal without pay. All right. Thank you. Thank you. Thank you very much for a reserved decision. Have a good day. Thank you.